Danielle C. JUSTICE, By her father and next friend Danny Justice, Danny Justice in his own right, and Nancy Carol Justice, Plaintiffs Below, Appellant,

v.

Lois Lorraine GATCHELL, Defendant Below, Appellee.

Supreme Court of Delaware.

Argued March 15, 1974.

Decided Aug. 13, 1974.

James P. D'Angelo and William H. Bennethum, III, Wilmington, for plaintiffs below, appellants.

Albert L. Simon, Wilmington, for defendant below, appellee.

Before HERRMANN, C. J., DUFFY, J., and QUILLEN, Chancellor.

HERRMANN, Chief Justice:

In this appeal, we are urged to strike down the Delaware Automobile Guest Statute [21 Del.C. § 6101(a)] [1] as being in contravention of the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution.

### I.

This action involves injuries received by the minor plaintiff, Danielle C. Justice, in an automobile accident. The suit is brought on her behalf by her father who, together with his wife, has also brought suit in their own right. The defendant in the action is the grandmother of Danielle.

---

1. 21 Del.C. § 6101(a) provides:

"§ 6101. Injury to non-paying guest; exceptions as to passengers of public carriers and prospective purchasers of vehicles

"(a) No person transported by the owner or operator of a motor vehicle, * * * as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator, or was caused by his wilful or wanton disregard of the rights of others."

At the time of the accident, Danielle was a passenger in an automobile owned and operated by the defendant grandmother. The grandmother raised the Guest Statute as a defense. The plaintiffs moved for summary judgment asserting that the Guest Statute is inapplicable on the facts of the case and, in any event, is unconstitutional. The Superior Court denied the motion for summary judgment; this appeal by the plaintiffs followed.

The plaintiffs make three arguments. We address ourselves to the most important first.

## II.

■ The plaintiffs argue that the Delaware Automobile Guest Statute is violative of the Equal Protection Clause in that its denial of a cause of action to a non-paying guest injured through the negligence of the host driver, while permitting such a cause of action to a paying guest, establishes an arbitrary and invidious discrimination for which there is no rational basis. In support of that position, we are urged to follow Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973). This has become the leading case in a new judicial trend inimical to Automobile Guest Statutes.

The present Delaware Automobile Guest Statute was enacted in 1933 (38 Del.L. Ch. 26).[2] At about the same time in the history of the evolution of the automobile, similar statutes were enacted in about half the States.[3] See 2 F. Harper and F. James, The Law of Torts, § 16.15, n. 4 (1956).[4]

Over the years, almost universally until the advent of *Merlo* in 1973, Automobile

Guest Statutes were upheld against constitutional attack. Early in the game, our Guest Statute was brought under constitutional scrutiny in Gallegher v. Davis, Del. Super., 7 W.W.Harr. 380, 183 A. 620 (1936). It was there assailed as being violative of the "due course of law" provision of the Delaware Constitution, Art. 1, Sec. 9, Del.C.Ann.[5] The holding in *Gallegher,* which has withstood the tests of time and challenge in this State, was that the Statute is constitutional. This conclusion was based principally upon Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). In *Gallegher,* the Court had this to say as to the purpose and intent of the then recently-enacted Guest Statute of 1933:

"* * *. [T]he history and language of the act indicates sufficiently the legislative belief that the multitudinous actions brought by guest passengers in automobiles against owners and operators, not infrequently the parties, plaintiff and defendant, being near relatives, presented so many instances of collusion, utter indifference to results because of protective insurance, perjury and consequent fraud upon the courts, as to constitute a serious public evil to be mitigated by defining the degree of care to be required of an automobile host to a guest." (183 A. at 622)

Is is noteworthy that the attack in *Gallegher* was based upon the "due course of law" provision of the State Constitution and not upon the Equal Protection Clause of the Fourteenth Amendment. This case is of first impression here as a challenge of the Guest Statute on equal protection grounds.

---

2. It replaced 36 Del.L. Ch. 270, enacted in 1929, which was declared unconstitutional in Coleman v. Rhodes, Del.Super., 5 W.W.Harr. 120, 159 A. 649 (1932).

3. But not in our neighboring States of Maryland, Pennsylvania, or New Jersey.

4. Commentators have suggested that the chief argument for the creation of such statutes in the 1920's and 1930's was the protection of liability insurance companies against collusive

litigation. See, e. g., Prosser, The Law of Torts, § 34, p. 187 (4th Ed. 1971); White. The Liability of an Automobile Driver to a Non Paying Passenger, 20 Va.L.Rev. 326, 332–333 (1934).

5. Del.Const., Art. 1, Sec. 9, provides in pertinent part:
   "* * * every man for an injury done him in his reputation, person, moveable or immoveable possessions, shall have remedy by the due course of law."

The *Silver* case, relied upon in *Gallegher*, involved the Connecticut Guest Statute, much like ours, which was challenged on equal protection grounds. In *Silver,* it was stated that whether there had been a serious increase in the evils of vexatious litigation in automobile guest cases was for the Legislature to determine, and that the wisdom of legislation restricting liability in such cases was not the concern of the courts. The United States Supreme Court upheld the Connecticut Statute in *Silver,* stating:

"In this day of almost universal highway transportation by motorcar, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the Legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit. [Citations] It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs." (50 S.Ct. at 59)

This remains the last word of the United States Supreme Court on the subject.

On the authority of *Silver,* until *Merlo,* Guest Statutes like ours have been consistently upheld against constitutional challenges, including those founded upon the Equal Protection Clause: Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961 (1937); Vogts v. Guerrette, 142 Colo. 527, 351 P.2d 851 (1960); Wright's Estate v. Pizel, 168 Kan. 493, 214 P.2d 328 (1950);

Smith v. Williams, 51 Ohio App. 464, 1 N. E.2d 643 (1935); Perozzi v. Ganiere, 149 Or. 330, 40 P.2d 1009 (1935); Fulghum v. Bleakley, 177 S.C. 286, 181 S.E. 30 (1935); Campbell v. Paschall, 132 Tex. 226, 121 S. W.2d 593 (1938); Shea v. Olson, 185 Wash. 143, 53 P.2d 615 (1936); Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581 (1931); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939); McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (1942); Delaney v. Badame, 49 Ill.2d 168, 274 N.E.2d 353 (1971).

The *Merlo* case broke the pattern last year, reflecting a growing judicial impatience with, and disapproval of, Guest Statutes in general. See cases collected at 2 Harper & James, The Law of Torts, § 16.-15, n. 3 (Supp.1968). In *Merlo,* the Supreme Court of California held that, under today's changing conditons, its Guest Statute denies equal protection of the laws, under both Federal and State Constitutions, to non-paying automobile guests. The rationale of *Merlo* is that the classifications which the Guest Statute creates, between those denied and those permitted recovery for negligently inflicted injuries,[6] bear no substantial and rational relation[7] to the Statute's traditionally recognized purposes of protecting the hospitality of host-drivers and of preventing collusive lawsuits. In rejecting the protection-of-hospitality justification, the Court cited such considerations as the greatly changed conditions since the 1930's arising from almost universal automobile liability insurance coverage.[8] In rejecting the collusion-prevention thesis, the Court reasoned that in

6. The distinctions being: (1) between gratuitous guests and paying passengers; (2) between automobile guests and other social guests; and (3) between different subclasses of automobile guests.

7. It is noted that the traditional equal protection "rationality" standard, and not the "strict scrutiny" standard, is applied in the testing of a Guest Statute against the Equal Protection Clause. See Brown v. Merlo, 106 Cal.Rptr. at 392, 506 P.2d at 216, n. 2; Tisko v. Harrison, Civ.App.Texas, 500 S.W.

2d 565 at 571 (1973); Husband M. v. Wife M., Del.Supr., 321 A.2d 115 (1974).

8. "First, if the characterization of an injured guest's lawsuit as an act of 'ingratitude' ever had general validity, its rationality has been completely eroded by the development of almost universal automobile liability insurance coverage in recent years. Whereas in the late 1920's and 1930's the statute's operation might realistically have been viewed as relieving most generous hosts from potentially great personal expense, today, with

broadly prohibiting all automobile guests from instituting actions for negligence because a "small segment" of that class may file collusive suits, the Statute "presents a classic case of an impermissibly over-inclusive[9] classification scheme"; i. e., a statutory classification that "imposes a burden upon a wider range of individuals than are included in the class of those tainted with the mischief at which the law aims". The Court went on to say in this connection: "Instead of confirming its disability to those who actually institute collusive suits, the provision reaches out beyond such persons and burdens the great number of honest automobile guests"; and it said "Such a statute does not treat similarly situated individuals in like manner, but instead reaches out beyond the individuals 'tainted with the mischief' at which a statute is directed, and imposes its burden on innocent individuals who do not share the condemning characteristics"; and the Court concluded that " * * * in barring suits by all automobile guests simply to protect insurance companies from some collusive lawsuits, the guest statute exceeds the bounds of rationality and constitutes a denial of equal protection." (106 Cal.Rptr. at 403, 506 P.2d at 227–228).

These novel, scholarly, and thoughtful rationales and conclusions in Brown v. Merlo have aroused a spirited dichotomy and wide divergence of judicial opinion in the several cases in which Guest Statutes have been tested against the Equal Protection Clause since *Merlo* appeared.

The Court of Civil Appeals of Texas unanimously declined to follow *Merlo,* and

upheld the Texas Guest Statute. Tisko v. Harrison, Civ.App.Texas, 500 S.W.2d 565 (1973). The Supreme Court of Kansas, in a 4–3 decision, adopted the basic rationale and conclusion of *Merlo,* and held the Kansas Guest Statute violative of Federal and State equal protection constitutional guaranties. Henry v. Bauder, 213 Kan. 751, 518 P.2d 362 (1974). The Supreme Court of Utah declined to follow *Merlo,* and unanimously upheld the Guest Statute of that State against a similar equal protection assault. Cannon v. Oviatt and Martin, Utah Supr., 520 P.2d 883 (1974). The Supreme Court of Iowa, in a 5–4 decision, rejected the *Merlo* approaches to the problem and upheld the Iowa Guest Statute as constitutional under the Equal Protection Clause, Keasling v. Thompson, Iowa Supr., 217 N.W.2d 687 (1974). The Supreme Court of North Dakota, declining to test their Guest Statute under the Federal Constitution, but following the *Merlo* approaches, unanimously found their Statute violative of the "arbitrary classifications" provision of the State Constitution in view of changing conditions occurring since the Statute's enactment in 1931. Johnson v. Hassett, N.D.Supr., 217 N.W.2d 771 (1974).

This contrariety of judicial opinion revolves basically around the question of whether the elimination of a Guest Statute, in the light of changing conditions, is within the realm of judicial action founded upon supposition and few facts, or whether it is more properly within the realm of legislative action founded upon empirical study.

the widespread prevalence of insurance coverage, it is the insurance company, and not the generous host, that in the majority of instances wins protection under the guest statute. Thus, in a day in which nearly 85 percent of automobile drivers carry liability insurance, the statute can no longer sequester the defense that it is a necessary means to thwart 'ungrateful' guests. In plain language, there is simply no notion of 'ingratitude' in suing your host's insurer." (106 Cal.Rptr. at 397, 506 P.2d at 221)

9. The theory is that "overinclusive classifications" are unreasonable classifications and violative of equal protection because they "fly squarely in the face of our traditional antipathy to assertions of mass guilt and guilt by association". Tussman & tenBroek, The Equal Protection of the Laws, 37 Cal.L.Rev. 341, 351–352 (1949) ; Note, Developments in the Law—Equal Protection, 82 Harv.L. Rev. 1065, 1086–1087 (1969).

It is clear from the learned but conflicting views appearing in the cases decided since *Merlo* that the question of the present constitutionality of a Guest Statute such as ours, under the Equal Protection Clause, is at least "fairly debatable".

■ Having reached that conclusion, we become mindful of the traditional self-restraint of this Court whenever it becomes engaged in testing the constitutionality of an act of the General Assembly. Such self-imposed limitation has been expressed by this Court in varying but consonant terms: Legislative acts should not be disturbed except in clear cases, and then only upon weighty considerations; a legislative enactment is cloaked with a presumption of constitutionality and should not be declared invalid unless its invalidity is beyond doubt. Klein v. National Pressure Cooker Co., Del.Supr., 31 Del.Ch. 459, 64 A.2d 529 (1949). Every presumption is in favor of the validity of a legislative act and all doubts are resolved in its favor; and if the question of the reasonable necessity for regulation is fairly debatable, legislative judgment must be allowed to control. State v. Hobson, Del.Supr., 7 Terry 381, 83 A.2d 846 (1951). There is a strong presumption of constitutionality attending a legislative enactment which, unless the evidence of unconstitutionality is clear and convincing, the court will be reluctant to ignore. State Highway Dept. v. Delaware Power & Light Co., Del.Supr., 39 Del.Ch. 467, 167 A.2d 27 (1961). One who challenges the constitutionality of a statute has the burden of overcoming the presumption of its validity. State v. Brown, Del.Supr., 195 A.2d 379 (1963).

■ In the area of equal protection especially, courts have traditionally afforded legislative classifications a presumption of reasonableness and constitutionality where discrimination is not based upon race, color, religion, ancestry, or other "inherently suspect" classification requiring a more "strict scrutiny". 1 Antieau, Modern Constitutional Law § 8.81, p. 630 (1969). A statutory discrimination or classification will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961); Aetna Casualty & Surety Co. v. Smith, Del.Supr., 36 Del.Ch. 391, 131 A.2d 168 (1957).

Applying these tests: We are not persuaded that the evidence of unconstitutionality of the Guest Statute is "clear and convincing"; or that the appellants have succeeded in overcoming the presumption of its constitutionality and validity; or that no state of facts may reasonably be conceived to justify the statutory classification under present-day conditions.

We share the view upholding the constitutionality of Guest Statutes against the force of the *Merlo* rationale. If the rule of *Silver,* the highest present authority on the subject, is to be changed and the strictures of the Fourteenth Amendment extended in this area of the law, we shall await the views of the United States Supreme Court on the subject.

On the basis of the record before us, even on the basis of information of which we might take judicial notice, we are unable to say that there are no longer any evils to be corrected, or permissible objectives to be accomplished, by the Guest Statute. Whether the concept of hospitality-protection or collusion-prevention has been so eroded by changing conditions, as to have disappeared as acceptable justification for the Guest Statute, is a problem more appropriate for legislative solution than for judicial determination. The General Assembly has access to relevant information bearing upon these matters more significant than any afforded this Court, bound as it is by the limitations of the record of this judicial proceeding.

■ The balancing of intangibles, such as are involved in the *Merlo* ap-

proaches, is a proper legislative function. As to the collusion-prevention thesis, for example, the General Assembly must weigh the advantages of barring fraudulent guest claims against the disadvantages of also barring honest guest claims.[10] The balancing of competing advantages and disadvantages is also fundamentally a legislative function. If the Guest Statute has become unacceptably unwise and unfair under current facts of life, it is for the General Assembly to act with respect to this Statute which it created more than 40 years ago. The wisdom of legislation is not within our realm; only the General Assembly may rectify legislation manifesting itself by hindsight as unwise. The appellants, and all who share increasing disillusionment with the Automobile Guest Statute under present conditions, must address themselves to the General Assembly. For this Court to abolish the Guest Statute because of changed conditions would, in our view, amount to impermissible judicial legislation.

Accordingly, we hold that the appellants have not shown the Delaware Automobile Guest Statute, even in its present day operation, to be in contravention of the Equal Protection Clause of the Federal Constitution.

### III.

■ The injured minor plaintiff in this case was six years old at the time of the accident.

The plaintiffs contend that a child of such tender years is incapable of being a "guest" within the meaning of the Guest Statute. The argument is that the word "guest" implies one who is offered and then accepts a free invitation from a host; that in order to accept such offer, the "guest" must be capable of knowingly accepting the invitation; and that a child six years of age is incapable of knowingly making the necessary consent. In support of that position, the plaintiffs cite Rosenbaum v. Raskin, 45 Ill.2d 25, 257 N.E.2d 100 (1970); Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971); and Plumley v. Klein, 31 Mich.App. 26, 187 N.W.2d 250 (1971). The defendant, in opposition, relies upon Lynott v. Sells, Del.Super., 2 Storey 385, 158 A.2d 583 (1958) and cases cited therein.

We do not reach the question of whether knowing acceptance of an invitation is always necessary to create a guest relationship.

The key fact here is that, at the time of the accident, the plaintiff child was riding with the defendant grandmother with the express consent of the child's mother. We hold, as did the Superior Court in *Lynott* upon which the Court below relied, that where there is express consent by a parent, a child of tender years is subject to the provisions of the Guest Statute. Considering the purposes of the Statute, this is the better rule, and is the weight of authority. See Chancey v. Cobb, 102 Ga.App. 636, 117 S.E.2d 189 (1960); Wood v. Morris, 109 Ga.App. 148, 135 S.E.2d 484 (1964); Favatella v. Poulsen, 17 Utah 2d 24, 403 P.2d 918 (1965); Whitfield v. Bruegel, 134 Ind.App. 636, 190 N.E.2d 670 (1963); Coleman v. Guarantee Reserve Life Ins. Co., 5 Cir., 337 F.2d 288 (1964); Horst v. Holtzen, 249 Iowa 958, 90 N.W.2d 41 (1958). To hold otherwise would be to deny the existence of a fundamental concept of our jurisprudence: that parental permission and consent may enable a minor to act legally. To hold otherwise would unjustly prevent recovery by an older sibling, while permitting recovery by the younger for the same negligence.

---

10. An analogous problem is dealt with in the Statute of Frauds in which it is assumed that the advantage of barring fraudulent claims of certain classes of oral contracts outweighs the disadvantages of barring honest claims on such contracts.

**104**

In so concluding, we understand, of course, the humane rationale of the decisions to the contrary upon which the plaintiffs rely. Because application of the Automobile Guest Statute so often results in harsh, unfair, and unreasonable results, courts have shown a general tendency to carve out exceptions to the operation of the Statute in the interest of justice. Our own courts have demonstrated that tendency. See, e. g., Engle v. Poland, Del.Super., 8 Terry 365, 91 A.2d 326 (1952); Robb v. Ramey Associates, Inc., Del.Super., 1 Terry 520, 14 A.2d 394 (1940); Truitt v. Gaines, D.Del., 199 F.Supp. 143 (1961). As a matter of policy, however, we do not favor further judicial creation of exceptions to the Statute. If, as many believe, the Delaware Automobile Guest Statute leads so often to unreasonable and unjust results and should be repealed forthwith, let its evils stand revealed to the General Assembly without further judicial effort to avoid a bad law by patchwork exceptions.

We conclude that there was no error below in holding the minor plaintiff subject to the Guest Statute.

### IV.

■ Finally, the plaintiffs contend that the benefit derived by the defendant grandmother, by reason of the companionship of the child, was sufficient to take the case out of the Guest Statute.

This is a classic example of the type of legal meandering often engaged in to bypass a Statute considered by many to be archaic and unjust. Of course, benefit to the driver is the crucial factor in determining whether a passenger in any given circumstance is a "guest without payment". Mumford v. Robinson, Del.Supr., 231 A.2d 477 (1967). But the intangible "benefit" asserted here is so ethereal as to merit no further comment.

\* \* \*

Affirmed.