## Shahadi v. Zinszer

*Arthur G. Girton,* for plaintiffs.
*Andrew J. Forbes,* for defendant.

PRESCOTT, *J.,* May 24, 1976—The matter presently before this court for disposition is a motion for summary judgment filed by defendant, William Zinszer.

The issue raised by defendant by the motion for summary judgment is whether the law of Penn-

sylvania governs the trespass action before us, or whether this court should apply the Delaware "host-guest" statute which would bar plaintiffs from recovering damages from defendant.

This case arises from a complaint in trespass filed on June 16, 1975, by John Shahadi, a minor, by his parent and natural guardian, Amille Shahadi, and Amille Shahadi, in his own right. The complaint alleges that at all times relevant hereto, plaintiffs were residents of the State of Delaware and that defendant was a resident of Pennsylvania. On or about June 27, 1973, plaintiffs, John Shahadi and Amille Shahadi, were passengers in an automobile owned and operated by defendant. On said date, it is alleged that, as a result of defendant's negligence, an accident occurred on Route 13, near Dover, Del., which resulted in personal injuries to each of plaintiffs.

On July 3, 1975, defendant filed an answer to the complaint denying liability for plaintiffs' injuries. Defendant's answer also raised new matter, to wit, that plaintiffs were guest passengers in defendant's automobile and, as such, are precluded from recovering against defendant absent any proof of intentional wrongdoing or willful or wanton disregard of the rights of plaintiffs: Delaware Guest Statute, Title 21, Delaware Code, section 6101(a).

Plaintiffs filed an answer to defendant's new matter alleging that the case should be governed by the laws of Pennsylvania.

From the pleadings and the depositions of the two plaintiffs, the following factual situation appears:

At the time of this occurrence, plaintiffs, Amille Shahadi and his minor son, John, resided in

Claymont, Del. Defendant Zinszer resided in Ogden, Delaware County, Pa.

Both John Shahadi and William Zinszer worked in Marcus Hook, Pa.; they had been co-workers for years.

Amille Shahadi and defendant Zinszer planned a fishing trip which included Amille's minor son, John. On June 27, 1973, defendant drove his car and picked plaintiffs up at their home in Claymont, Del. The parties then travelled to Fenwick Island, Del., where they fished. At the time of the accident, the parties were on their way to defendant's house in Pennsylvania, where the fish they caught were to be cleaned. The fish were to be cleaned for defendant's benefit because plaintiffs did not like to eat fish. Plaintiffs did not pay defendant for any expenses of the trip, nor did plaintiffs give defendant money for any purpose. To the contrary, each of the parties paid for their own food, bait, etc.

Approximately 45 minutes prior to the accident, the parties stopped to eat, at which time defendant had one glass of beer. The beer had no apparent effect upon defendant. Both the plaintiffs fell asleep after resuming the trip and were asleep at the time of the accident. Prior to falling asleep, Amille Shahadi stated that defendant was not speeding, nor was defendant otherwise acting negligently. Subsequent to the accident, defendant stated to plaintiffs that he fell asleep just before the accident.

The Pennsylvania Supreme Court held:

"In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interests underlying the particu-

lar issue before the court.' Griffith, supra at 21 [Griffith v. United Airlines, 416 Pa. 1, 203 A.2d 796]. When doing this, it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." Cipolla v. Shaposka, 439 Pa. 563, 566, 267 A.2d 854 (1970).

Neither counsel has presented Pennsylvania authority which would be applicable to the facts before us. However, a Rhode Island case (Labree v. Major, 306 A.2d 808 (R.I., 1973)), involved an identical legal issue. A Rhode Island defendant left her home to visit plaintiffs at their home in Massachusetts. While in Massachusetts, an accident occurred which resulted in personal injuries to plaintiffs. Plaintiffs filed suit in Rhode Island and at trial the law of Rhode Island was applied to the case. Defendant contended that the "host-guest" statute of Massachusetts should have been applied. The Massachusetts statute would have denied recovery to plaintiffs, unless plaintiffs could prove gross negligence on the part of defendant-host. Rhode Island's law permitted recovery if plaintiffs could prove ordinary negligence on the part of defendant.

The Supreme Court of Rhode Island held that the law of Rhode Island applied to the case. In so holding, the said court stated:

"Massachusetts has *no real interest* in protecting a Rhode Island driver against ungrateful guests." (Emphasis supplied.)

The court went on to note that Massachusetts was not firm in enforcing the host-guest statute, since numerous exceptions were judicially created against the strict application of the statute. It was

also noted that the State of Rhode Island had never adopted the doctrine of degrees of negligence and that a driver in Rhode Island owes his guest the same duty of ordinary care that he owes to any other person.

Of particular significance is the following statement made by the Supreme Court of Rhode Island:

"The state has an interest in enforcing the standard of care of an automobile operator no matter where his guest resides. . . . We feel that Rhode Island's interest in imposing upon its drivers a duty of ordinary care towards their passengers transcends consideration of the guest's residence and of the state in which the vehicle is operated . . . . No driver alters his manner of driving when he crosses into a state which holds him to a lesser degree of care towards his passenger, because he would foresee his legal liabilities in accident cases in light of his own state's law."

In conclusion, the Rhode Island court noted that to simply apply the law of Massachusetts was a retreat to the doctrine of lex loci delicti (the place of the wrong) which the court had abandoned.

The Labree case has been reviewed in detail because of its relevance to the issue now before us. Pennsylvania, like Rhode Island, has departed from the simplistic application of the doctrine of lex loci delicti. See Griffith v. United Airlines, 416 Pa. 1, 203 A.2d 796 (1964). As a result, Pennsylvania has adopted the principle that torts should be governed by the law of the State which has the greater interest in the application of its law. In determining which State has the greater interest, the following test is to be applied:

"[S]ee what contacts each state has with the accident, the contacts being relevant only if they re-

late to the *'policies* and *interests* underlying the particular issue before the court.' Griffith, supra at page 21. When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than a quantitative scale." Cipolla v. Shaposka, 439 Pa. 563, 566, 267 A.2d 854 (1970).

Applying the foregoing test, it can be said that Pennsylvania has a real interest in enforcing a standard of care upon its own automobile operators. The Commonwealth of Pennsylvania is clearly concerned with the licensing and regulation of persons to whom a driver's license is issued. It is not clear to this court what interest Delaware would have in protecting a Pennsylvania driver against his Delaware guests. Adopting the reasoning in Labree, supra, it is not likely that defendant, Zinszer, a licensed Pennsylvania driver would alter his driving manner in Delaware just because Delaware would hold him to a lesser degree of care towards his passengers. Since Zinszer was a Pennsylvania resident, this court holds that Pennsylvania has a superior interest as regards the conduct and licensing of its drivers.

Finally, Delaware itself is not firm in the application of its statute, since it is construed quite narrowly. See, e.g., Mumford v. Robinson, 231 A.2d 477 (Del., 1967). In that case, the guest and host, both Delaware residents, were close personal friends who were on their way to a fabric shop, when an accident occurred. The guest had promised to give the host a sewing lesson when they returned from the shop. No financial consideration was promised or expected between the parties. The court held that the sewing lesson constituted a benefit to the host and the guest was allowed to

recover from the host for the damages suffered by the guest as a result of the accident. From this case, it is clear that Delaware construes its statute to protect one who *generously, without accruing benefit, has transported another in his motor vehicle.* (For other examples wherein the Delaware courts have strictly narrowed the effect of its host-guest statute, see Delaware Code Annotated, Title 21, section 6101, and the cases noted under said section.) In the case at hand, recall that fish caught by the parties was to be cleaned at defendant's home in Pennsylvania for the sole benefit of defendant.

In light of the above, we conclude that the law of Pennsylvania is applicable to the case before us and that plaintiffs' cause of action is not banned by virtue of the Delaware host-guest statute.

Therefore, we enter the following

## ORDER

And now, May 24, 1976, after consideration of argument and briefs submitted by respective counsel before the court en banc, it is hereby ordered and decreed that the motion for summary judgment filed by defendant be, and the same is hereby, dismissed.